## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA :
          :  CRIMINAL CASE NO.
 v.        :  1:19-cr-00221-TWT-RGV
          :
DONTAVIOUS MATTHEWS, *et al.* :

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Defendants Dontavious Matthews ("Matthews") and Quentin Truley ("Truley") are charged with committing Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). [Doc. 1].[1] Truley initially filed a "Motion to Suppress Search and Seizure of Cell Phones and Motion in Limine," [Doc. 33], but the Court required him to perfect his motion to suppress to establish his standing to challenge the search and seizure of the cell phones and to file a separate motion *in limine* instead of combining the two in a single motion, [Doc. 35]. Truley subsequently filed "Defendant's Amended Motion to Suppress Search and Seizure of Cell Phones," [Doc. 36], and "Defendant's Second Motion in Limine," [Doc. 37], and the

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

government has filed a response opposing the motion to suppress, [Doc. 39]. "Defendant's Second Motion in Limine," [Doc. 37], which seeks, pursuant to Federal Rules of Evidence 401, 403, and 404, to exclude from evidence at trial certain data, documents, and photographs showing Truley with firearms, drugs, and money that were obtained from the cell phones searched by law enforcement, is **DEFERRED** to the District Judge, and for the reasons that follow, it is **RECOMMENDED** that Truley's original "Motion to Suppress Search and Seizure of Cell Phones and Motion in Limine," [Doc. 33], and "Defendant's Amended Motion to Suppress Search and Seizure of Cell Phones," [Doc. 36], be **DENIED**.[2]

## I. STATEMENT OF FACTS

Truley is charged with two counts of Hobbs Act robbery by using force and violence to take cellular telephones from businesses engaged in and affecting interstate commerce and two counts of brandishing a firearm during and in relation to those robberies.[3] [Doc. 1]. The first robbery occurred on December 17, 2017. [Id.]. On that day, a black female, later identified as a suspected accomplice

---

[2] Matthews filed a "Preliminary Motion to Suppress Statements," [Doc. 31], and a "Preliminary Motion to Suppress Evidence," [Doc. 32], both of which were withdrawn at the pretrial conference, [Doc. 35].

[3] Matthews is charged with one count of Hobbs Act robbery and one count of brandishing a firearm during and in relation to that robbery. [Doc. 1].

in the robbery, entered a Sprint store and was using a cell phone while looking around inside the store shortly before two black males entered the store and approached a display counter.  [Doc. 39-1 at 7, 9].[4]  Store employees reported that after the two males entered the store and approached the counter, one of the males pulled out a gun and began to demand money and cellphones.  [Id. at 7].[5]  The male suspects then began to collect multiple cell phones from customers and ordered an employee to open the safe at the rear of the store.  [Id.].  The robbers stole approximately 18 iPhones from the safe, [id.], and the two male suspects fled the store on foot in the same direction as the female suspect, [id. at 7, 9].

The second robbery occurred on December 28, 2017.  [Id. at 7].  On that day, two black males walked into a Verizon Wireless store, told the employees to get

---

[4] The facts are drawn from the affidavit submitted to obtain the search warrants for the cell phones that are the subject of the motion to suppress, and the affidavit was materially the same for each application, modified only to describe the particular cell phone that was the subject of the application. See [Doc. 33-1]. Truley attached copies of the applications and search warrants for five cell phones to his original motion, [id.], and the government attached as exhibits to its response, the applications and search warrants for the three cell phones that Truley asserts he has standing to challenge, see [Doc. 39-1, Ex. A - Search Warrant for Samsung Verizon (Black Flip Phone); Doc. 39-2, Ex. B - Search Warrant for ZTE (Black/Gray Flip Phone); Doc. 39-3, Ex. C - Search Warrant for Samsung J7 Prime (Gold Phone)].  For ease of reference, the Report and Recommendation only cites the affidavit attached as Exhibit A to the government's response, [Doc. 39-1].

[5] The female suspect left the store shortly before the robbery and walked to the right of the building.  [Doc. 39-1 at 9].

on the ground, and brandished semi-automatic handguns.  [Id. at 7-8].  The suspects forced the store manager to the back of the store where they stole 28 cell phones.  [Id. at 8].  During the robbery, the store manager put a tracking device inside one suspect's bag.  [Id.].  After the suspects left the store, the Verizon corporate office began tracking the suspects using the device placed in their bag. [Id.].  DeKalb County uniformed police officers subsequently began to track the suspects and located a white 2015 Nissan Altima in which they believed the suspects were traveling.  [Id.].  The Nissan Altima fled from the officers and crashed into a tree, and three suspects, two black males and one black female, who was the driver, exited the vehicle and fled on foot.  [Id.].  Officers subsequently apprehended Truley during a foot chase and positively identified him as one of the robbery suspects based on the clothing he was wearing when he was apprehended.[6]  [Id.].  The second male suspect and the female suspect were not apprehended.[7]  [Id.].  Officers of the DeKalb County Police Department obtained

_____

[6] Truley was also identified as one of the suspects in the Sprint store robbery based on his appearance, the clothing he wore, and the firearm he brandished upon a subsequent review of the surveillance video.  [Doc. 39-1 at 8].

[7] The female accomplice was later identified after she reported to police that her Nissan Altima, which the suspects crashed and abandoned, had been stolen, but the time period during which she claimed the car had been stolen was after it already had been crashed and abandoned by the suspects.  [Doc. 39-1 at 8].  After interviewing her, investigators determined that her physical appearance and the

and executed a search warrant for the abandoned vehicle and found the cell phones stolen from the Verizon Wireless store and five other cell phones in the vehicle from which the suspects fled. [Id.]. Detective C. R. Van Alen of the Brookhaven Police Department subsequently obtained warrants signed by a DeKalb County Magistrate to search each of the five cell phones recovered from the abandoned vehicle, see [Doc. 33-1], and Truley moves to suppress the seizure and search of the cell phones, [Docs. 33 & 36].

## II. DISCUSSION

Truley initially moved to suppress the seizure and search of all five cell phones, attacking the adequacy of probable cause set forth in the affidavit submitted to obtain the search warrants. See generally [Doc. 33]. In his amended motion, Truley concedes that he does not have standing to challenge the search of two of the five cell phones – a black iPhone and a white Samsung J7 Prime phone. See [Doc. 36 at 6]. However, Truley asserts that he has standing as to the three other phones – a Samsung flip phone, a ZTE phone, and a Samsung J7 Prime phone – because he claims ownership of the phones in the amended motion to suppress

_____

manner in which she carried her purse matched the female suspect in the surveillance video of the Sprint store robbery, [id.], and subsequent investigation revealed that she was Facebook friends with Truley and also had a personal relationship with an individual matching the description of the second male suspect from the Sprint store robbery, [id. at 9].

and asserts that law enforcement established that the phones belonged to him. [Id.]. He further argues that the affidavit submitted to obtain the search warrants failed to establish probable cause to believe that evidence of the robberies would be found on the phones. [Id. at 6-8]. The government responds that none of Truley's arguments succeed in establishing that he has standing to challenge the search of the three cell phones, and that even if could establish standing, he abandoned any privacy interest he had in the phones when he left them in a vehicle while fleeing from the police. [Doc. 39 at 3-6]. Moreover, the government maintains that the affidavit for the search warrants established probable cause, [id. at 6-10], and if it did not, the officers who executed the warrants relied in good faith on their validity, and evidence obtained from the phones is not subject to suppression, [id. at 10-11].

## A.   Standing

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. However, "'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'" Rakas v. Illinois, 439 U.S. 128, 133-34 (1978) (citations omitted) (quoting Alderman v. United States, 394 U.S. 165, 174 (1969)). "Fourth Amendment jurisprudence requires that one challenging as unreasonable a search or seizure must have

'standing,' i.e., a legitimate expectation of privacy in the [item] searched." United States v. McCray, CRIMINAL ACTION FILE NO. 1:15-cr-212-WSD/AJB, 2017 WL 9472888, at *6 (N.D. Ga. June 15, 2017), adopted by 2017 WL 3141172, at *14 (N.D. Ga. July 25, 2017) (citing United States v. Gonzalez, 940 F.2d 1413, 1420 n.8 (11th Cir. 1991)).  Consequently, to bring a claim that the government conducted an unconstitutional search under the Fourth Amendment, a defendant must show that "'(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable.'" United States v. Bushay, 859 F. Supp. 2d 1335, 1361 (N.D. Ga. 2012), adopted at 1354 (quoting United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (per curiam)); see also California v. Ciraolo, 476 U.S. 207, 211 (1986) (citation omitted) (explaining that standing to challenge a search under the Fourth Amendment requires a subjective expectation of privacy that society would recognize as legitimate); United States v. Lowry, 315 F. App'x 214, 215 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted); United States v. Baron-Mantilla, 743 F.2d 868, 870 (11th Cir. 1984) (per curiam) (citation omitted).  Thus, "a defendant must establish both a subjective and an objective expectation of privacy," [8] and he "bears the burden of showing a

---

[8] "The subjective prong is a factual inquiry, and requires that a person exhibit an actual expectation of privacy," while the "objective prong is a question of law, and requires that the privacy expectation be one that society is prepared to

legitimate expectation of privacy in the area searched."  United States v. Suarez-Blanca, Criminal Indictment No. 1:07–CR–0023–MHS/AJB, 2008 WL 4200156, at *6  (N.D. Ga. Apr. 21, 2008) (citations omitted); see also United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) (holding that standing is the first issue a district court judge must consider when adjudicating a motion to suppress  evidence, and it is the defendant's burden to establish a legitimate expectation of privacy); United States v. Jefferson, Criminal Case No. 1:09–CR–324–WSD–RGV, 2010 WL 3928049, at *4 (N.D. Ga. May 25, 2010), adopted by 2010 WL 3927874, at *9 (N.D. Ga. Oct. 4, 2010), aff'd, 451 F. App'x 833 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted) ("In other words, [defendant] has the burden to establish that he has standing to challenge the search or seizure.").  A defendant cannot rely on general, conclusory, or vague assertions to establish standing.  United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir. 2000) (citation omitted); United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (citation omitted).

---

recognize as reasonable."  Bushay, 859 F. Supp. 2d at 1362 (citations and internal marks omitted); see also United States v. Durdley, 436 F. App'x 966, 968 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted).  "An expectation of privacy is reasonable if it has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."  United States v. Dixon, 901 F.3d 1322, 1338 (11th Cir. 2018) (citation and internal marks omitted).

Truley was afforded an opportunity to perfect his original motion to suppress to establish his standing with respect to the cell phones that were seized and searched, [Doc. 35], but he has presented no evidence to establish that he had a reasonable expectation of privacy in the phones recovered from the abandoned car from which he fled, see generally [Doc. 36], and his "failure to present any evidence indicating an expectation of privacy in the [cell phones] means that he has not met his baseline burden to show standing to contest the search," United States v. Jenkins, No. 17-1377, 2018 WL 3559209, at *9 (6th Cir. July 24, 2018) (unpublished) (footnote and citation omitted); see also United States v. Caymen, 404 F.3d 1196, 1200 (9th Cir. 2005) (finding defendant failed to "carry[y] his burden of proof to establish an 'acceptable' expectation of privacy in the laptop" where he "did not submit an affidavit or other evidence supporting his claim that he had honestly purchased and owned the laptop" and while he "did make such a claim to the police during their search of his room, that claim was, of course, unsworn"); McCray, 2017 WL 9472888, at *10 (noting that defendant "has the burden and did not provide sufficient information about his relationship to the vehicle" that was searched and seized).  The unsworn statement in the amended suppression motion that the three cell phones at issue belonged to Truley does not establish standing, and he cannot establish standing by relying on the government's allegations, see [Doc. 36 at 6]; instead, he must affirmatively "allege facts that, if proved, would

require the grant of relief," United States v. Lewis, Criminal No. 07-00266-CG, 2007 WL 2996347, at *1 (S.D. Ala. Oct. 12, 2007) (citations and internal marks omitted); United States v. Thompson, 171 F. App'x 823, 828 (11th Cir. 2006) (per curiam) (unpublished) (finding that where the only fact the defendant alleged in his motion to suppress relating to standing was that the "government contend[ed]" he was renting the room that was searched was not sufficient to establish standing); see also United States v. Singleton, 987 F.2d 1444, 1449 (9th Cir. 1993) (concluding that "the district court erred by relying solely on the government's theory of the case in finding that [defendant] had standing to contest the search"), and he has failed to do so here.  Thus, Truley's unsworn assertion that the three cell phones belong to him and that law enforcement believes that he previously used the three cell phones does not establish standing to challenge the search of those phones.

## B.   **Abandonment**

The government contends that even if Truley could establish standing with respect to the three cell phones, "he abandoned the phones and any privacy interest in them when he left them in a vehicle while fleeing from the police." [Doc. 39 at 4-6].  "One who voluntarily abandons personal property in the Fourth Amendment sense abandons one's reasonable expectation of privacy in that property and cannot challenge the constitutionality of its subsequent search or

seizure." United States v. Anderson, 754 F. Supp. 442, 443 (E.D. Pa. 1990) (citations omitted); see also United States v. Stevenson, 396 F.3d 538, 546 (4th Cir. 2005) (citations omitted); United States v. Tinoco, 304 F.3d 1088, 1117 (11th Cir. 2002) (citations omitted); United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) (per curiam) (citations omitted) ("[A]n individual who abandons or denies ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police."); United States v. Collis, 766 F.2d 219, 222 (6th Cir. 1985) (per curiam) (citations omitted); United States v. Edwards, 644 F.2d 1, 2 (5th Cir. Unit B 1981) (per curiam) (citations omitted); United States v. Cruz, No. 5:06-CR-95(WDO), 2007 WL 781866, at *5 (M.D. Ga. Mar. 13, 2007). "Abandonment is akin to the issue of standing because a defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned." United States v. Quintana-Grijalva, 332 F. App'x 487, 491-92 (10th Cir. 2009) (unpublished) (citation and internal marks omitted); see also Pineda v. Warden, Calhoun State Prison, 802 F.3d 1198, 1204 (11th Cir. 2015) ("[A] person can abandon his possessory interest in a way that eliminates his standing to challenge a search.").

"The abandonment of one's privacy interest is primarily a question of intent and is determined objectively." Anderson, 754 F. Supp. at 443-44 (citation omitted). "The intent may be inferred from words spoken, acts done, and the relevant

circumstances existing at the time of the alleged abandonment." Id. at 444 (citing United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973)[9]).  In United States v. Sparks, 806 F.3d 1323, 1341 (11th Cir. 2015), the Eleventh Circuit explained that a commonsense approach should be used when evaluating abandonment. Id. at 1342 (citation omitted).  The Court must "assess objectively whether abandonment has occurred, based primarily on the prior possessor's intent, as discerned from statements, acts, and other facts." Id. (citation omitted).  "Police pursuit or the existence of a police investigation does not of itself render the abandonment involuntary." Id. (citation omitted); see also United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994) (citation omitted); United States v. Gibbs, CRIMINAL ACTION NO. 1:17-CR-00207-CAP-CMS-1, 2018 WL 6331341, at *4 (N.D. Ga. Dec. 4, 2018) (citation omitted).

Courts repeatedly have held that when an individual flees from the police and in the process leaves behind an item inside a vehicle, he has abandoned any interest in that item for Fourth Amendment purposes. See, e.g., United States v. Edwards, 411 F.2d 749, 750-51 (5th Cir. 1971) (finding that the defendant abandoned his reasonable expectation of privacy to property inside a vehicle when

---

[9] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

he exited the vehicle, leaving the lights and engine on, and fled from police on foot); United States v. Turner, Case No. 8:18-cr-80, 2019 WL 2287967, at *2-3 (M.D. Fla. May 29, 2019) (concluding that defendant did not have standing to challenge the search because he abandoned the cell phone in a vehicle when fleeing from law enforcement); United States v. Williams, CR418-147, 2019 WL 1612833, at *4-5 (S.D. Ga. Feb. 27, 2019) (same).

Here, the cell phones in question were recovered in a vehicle from which Truley and two other suspects fled when they were encountered by the police. [Doc. 39-1 at 8].  Truley exited the vehicle and fled the scene, leaving behind the three cell phones he now claims are his along with the stolen cell phones from the Verizon Wireless store robbery.  [Id.]; see also [Doc. 36 at 6].  There is no allegation or evidence that he owned the vehicle where he left the cell phones.  See generally [Docs. 33 & 36].   Rather, the facts before the Court indicate that the vehicle belonged to the female suspect who was identified after reporting that the vehicle had been stolen.  [Doc. 39-1 at 8].  Thus, a commonsense consideration of the facts demonstrates that Truley abandoned the three cell phones when he left them behind in a car that did not belong to him as he fled from police.  By fleeing, Truley voluntarily relinquished any reasonable expectation of privacy in the vehicle and its contents, and he thus lacks standing to oppose the subsequent seizure and search of the cell phones.  See United States v. Edwards, 441 F.2d 749, 751-53 (5th

13

Cir. 1971) (finding defendant had no expectation of privacy in car he abandoned by fleeing from police on foot); United States v. Hunter, Criminal File No. 1:07-CR-310-1-TWT, 2008 WL 552881, at *7 n.6 (N.D. Ga. Feb. 25, 2008), adopted at *1 (noting that items seized from vehicle would be admissible because defendant abandoned his interest in vehicle when he fled from it following a police chase); see also United States v. Kirlew, 291 F. App'x 536, 538 (4th Cir. 2008) (per curiam) (unpublished) (citation and internal marks omitted) (finding defendant abandoned vehicle when he jumped out of it and fled on foot, stating that "abandonment may be found where a fleeing defendant relinquishes an object to make his flight easier"); United States v. Lewis, No. CR 08-1136-FRZ-JCG, 2009 WL 1856643, at *6 (D. Ariz. June 29, 2009), adopted at *1 (finding defendant who fled from vehicle that did not belong to him manifested intention to abandon it); United States v. Noble, No. 07 Cr. 284(RJS), 2008 WL 1990707, at *6 (S.D.N.Y. May 7, 2008) (citation omitted) (finding defendant abandoned vehicle when he crashed it on the side of the road and fled on foot); United States v. Muhammad, 554 F. Supp. 2d 1314, 1320 (M.D. Fla. 2008), adopted at 1316 (finding that because defendant "abandoned the firearm before he was seized," he did "not have standing to contest the seizure of the abandoned property"); United States v. Lawrence, Criminal No. 06-83, 2007 WL 925893, at *3 (E.D. Pa. Mar. 16, 2007) (finding defendant abandoned vehicle when he ran away from it); United States v. Welch,

No. CRIM.05-50111, 2006 WL 2666307, at *2 (W.D. La. Sept. 15, 2006), adopted at *1 (citation omitted) ("Defendant has no standing to complain about the search of property that he has voluntarily abandoned."); United States v. Libbett, No. 05-CR-60692, 2006 WL 2620049, at *10 (W.D.N.Y. Sept. 13, 2006), adopted at *2 (footnote and citations omitted) ("[The defendant] fled on foot, leaving the driver's door open and the engine running. [The defendant's] flight constituted an abandonment of the automobile, and concomitant abandonment of any expectation of privacy he may have had in the vehicle."); United States v. Lynch, 290 F. Supp. 2d 490, 494-97 (M.D. Pa. 2003) (stating that "abandonment would be sufficient reason" for the court to deny defendant's suppression motion where he fled from his vehicle, "leaving the driver's door open and the motor running," after ramming a police cruiser). Because he abandoned any privacy interest that he may have had in the three cell phones, Truley does not have standing to challenge their seizure and search, and his motion to suppress is due to be denied.

## C.   <u>Probable Cause</u>

The government argues that even if Truley had standing to challenge the seizure and search of the three cell phones and had not abandoned his expectation of privacy in the content of the cell phones, his motion to suppress still should be denied because there was sufficient probable cause to believe that evidence of the

armed robberies would be found in the cell phones to support issuance of the challenged search warrants.  [Doc. 39 at 6-10].  The Court agrees.

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested."  United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984) (citing Zurcher v. Stanford Daily, 436 U.S. 547, 558 (1978)); see also United States v. Cadet, Criminal Action Nos. 1:11-CR-00522-WBH-LTW, 1:11-CR-00113-WBH-LTW, 2013 WL 504892, at *4 (N.D. Ga. Jan. 16, 2013), adopted by 2013 WL 504815, at *1 (N.D. Ga. Feb. 8, 2013), aff'd, 574 F. App'x 917 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted). That is, "[p]robable cause to search . . . requires some nexus between the [property to be searched] and the alleged crime."  United States v. Joseph, 709 F.3d 1082, 1100 (11th Cir. 2013) (citation and internal marks omitted).  "Probable cause deals 'with probabilities[, which are] . . . . the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  Illinois v. Gates, 462 U.S. 213, 241 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)); see also United States v. Spann, No. 15–20070, 2015 WL 1969111, at *3 (S.D.

Fla. May 1, 2015), aff'd, 649 F. App'x 714 (11th Cir. 2016) (per curiam) (unpublished) (citation omitted).[10]

The Eleventh Circuit has explained the Court's review of the sufficiency of a search warrant as follows:

> When called upon by law enforcement officials to determine the legitimacy of search warrants and their supporting affidavits, issuing magistrates and reviewing courts alike must strike a delicate balance between constitutional guarantees against excessive intrusions into areas of individual freedom and the Government's need to access and to secure relevant evidence in criminal prosecutions.  In particular, issuing magistrates are given the unenviable task of making "firing line" decisions that attempt to encourage availment of the warrant process while simultaneously striving to protect citizens from unwarranted governmental interference.  In recognition of the difficulty inherent in discharging this responsibility, reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations.

United States v. Miller, 24 F.3d 1357, 1363 (11th Cir. 1994).  "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a

---

[10] "[T]he term probable cause, . . . means less than evidence which would justify condemnation. . . . It imports a seizure made under circumstances which warrant suspicion."  New York v. P.J. Video, Inc., 475 U.S. 868, 876 (1986) (alterations in original) (citations and internal marks omitted).  "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision."  Id. (citation and internal marks omitted).  That is, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules," Gates, 462 U.S. at 232, and "[c]ertainty has no part in a probable cause analysis," United States v. Frechette, 583 F.3d 374, 380 (6th Cir. 2009) (citation omitted).

hypertechnical manner." Id. at 1361 (citation omitted).  Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Id. (citation omitted); see also United States v. McCullough, Criminal Indictment No. 1:11–CR–136–JEC/AJB–01, 2012 WL 11799871, at *13 (N.D. Ga. Oct. 9, 2012), adopted by 2014 WL 3955556, at *2 (N.D. Ga. Aug. 13, 2014) (citations omitted).  Furthermore, "[t]he fact than an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (citations omitted); see also Adams v. Williams, 407 U.S. 143, 149 (1972) (citation omitted). The burden of establishing that a search warrant is defective is upon the defendant, United States v. Lockett, 533 F. App'x 957 (11th Cir. 2013) (per curiam) (unpublished) (citation omitted) ("When a search is conducted pursuant to a warrant, the burden is on the defendant to show that the warrant is invalid."); see also Franks v. Delaware, 438 U.S. 154, 171 (1978), and the Court's consideration of Truley's facial challenge to the search warrants is confined to the four corners of the search warrant affidavit, see United States v. Schulz, 486 F. App'x 838, 841 (11th Cir. 2012) (citation omitted); United States v. Lockett, 674 F.2d 843, 845 (11th Cir. 1982) (citations omitted) ("In passing on the validity of the warrant, consideration may be given only to information brought to the attention of the magistrate.").

Truley does not dispute that the affidavit for the search warrants at issue established probable cause to believe that he committed the armed robberies. [Doc. 36 at 7]. Instead, he contests whether there was probable cause to believe that evidence of the armed robberies would be found on the three cell phones. [Id. at 6-8]. In his amended motion, Truley argues that since officers already had evidence of his involvement in the armed robberies, there was no probable cause to search the phones, and law enforcement "was merely on a fishing expedition for evidence of anything indicative of criminal activity." [Id. at 7-8]. The government responds that "[t]he fact that law enforcement had sufficient evidence to suspect that the defendant was involved in the armed robberies – evidence that was included in the search warrant affidavits – demonstrates that there was ample probable cause to search the cell phones for evidence of the armed robberies." [Doc. 39 at 7-8].

The affidavit submitted to obtain the search warrants for the cell phones stated that during the first robbery on December 17, 2017, a female suspect was observed on surveillance video using her cell phone inside the Sprint store before the other two robbery suspects entered the store, and all three suspects left the store on foot in the same direction. [Doc. 39-1 at 7]. The affidavit described in detail the second robbery, the apprehension of Truley, the escape by a second male suspect and a female suspect who fled from the vehicle all three were in, and the

19

discovery of the five cell phones and the stolen cell phones in the abandoned vehicle. [Id. at 7-9]. The affidavit further connected Truley and the female suspect to the first robbery of the Sprint store. [Id.]. The government asserts that "[t]he fact that a suspect used a cell phone inside the location of a robbery provides probable cause to search the cell phones left behind by that suspect and others inside that suspect's vehicle." [Doc. 39 at 8].

The Supreme Court has recognized that "it takes no special expertise for a judge to infer that information related to an active criminal enterprise may be contained on a cell phone." United States v. Kendricks, CRIMINAL ACTION FILE NO. 1:15-CR-400-MHC-AJB, 2016 WL 5952743, at *7 (N.D. Ga. Oct. 13, 2016), aff'd, 723 F. App'x 950 (11th Cir. 2018) (per curiam) (unpublished) (citing Riley v. California, 573 U.S. 373, 401 (2014)). "Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals." Riley, 573 U.S. at 401. In this case, the cell phones were discovered in a vehicle abandoned by Truley and two other suspects in an armed robbery in which the cell phones stolen during the robbery were also recovered. [Doc. 39-1 at 8]. Officers had probable cause to search the abandoned phones in an effort to identify the other suspects of the armed robbery who had not been apprehended. The affidavit submitted to obtain the search warrants clearly stated that

investigators expected to find information about both the suspects and the armed robberies on the cell phones – including basic information such as who used the cell phones. [Id. at 10]. The affidavit explained that the cell phones would be searched to locate carrier details, the cell phone numbers, location data that could link the suspects to the robbery locations, and data logs that may show the facilitation and orchestration of the armed robberies. [Id.]. The government correctly contends that the "detailed information provided in the affidavits is more than sufficient to establish probable cause that evidence of the armed robberies would be found on the cell phones." [Doc. 39 at 9-10 (citing Kendricks, 2016 WL 5952743, at *7-8 ("finding sufficient nexus to search cell phones that were left in a car by two gang members who law enforcement believed were planning to retaliate against a rival gang where affidavit provided only that the gang members possessed firearms, details of how they dressed, and that they were found in the rival gang's territory"))]. Accordingly, Truley's motion to suppress the search warrants is due to be denied on this basis as well.

## D.   **Good Faith Exception**

Even if the search warrants had lacked probable cause, the government contends that the motion to suppress should still be denied because the officers relied in good faith on the search warrants. [Doc. 39 at 10-11]. Under United States v. Leon, 468 U.S. 897, 919-21 (1984), "the exclusionary rule should not be applied

to exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate[.]"  United States v. Sharp, Civil Action File No. 1:14–cr–229–TCB, 2015 WL 4641537, at *14 n.18 (N.D. Ga. Aug. 4, 2015), adopted at *5 (citation and internal marks omitted); see also United States v. Robinson, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (footnote and citation omitted).

There are four situations in which the Leon good-faith exception does not apply and suppression is warranted:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (citation and internal marks omitted).  None of the circumstances precluding the good faith exception apply here as there is no allegation that false information was included in the affidavit, and there is nothing in the record that even hints that the magistrate who reviewed the affidavit and signed the search warrants engaged in any misconduct

or abrogation of judicial responsibility, and as already discussed, the affidavit set forth sufficient probable cause, and in any event is not "so lacking . . . as to render official belief in its existence entirely unreasonable."   Martin, 297 F.3d at 1313 (citation and internal marks omitted).   Moreover, the warrants are facially valid in that each one describes in sufficient detail the cell phone to be searched and the items to be seized and is signed by a magistrate.   See [Docs. 39-1 through 39-3]; see also United States v. Travers, 233 F.3d 1327, 1330 (11th Cir. 2000) (citation omitted) (finding warrant "was not 'so facially deficient—i.e., failing to particularize the place to be searched or the things to be seized—that the executing officers could not have reasonably presumed it to be valid'").   Accordingly, the law enforcement agents executing the warrants were justified in believing in their validity, and evidence seized during the execution of the cell phone warrants would not be subject to suppression under the good faith exception even if the warrants were found to lack probable cause.   See Massachusetts v. Sheppard, 468 U.S. 981, 989-90 (1984).

## III.  CONCLUSION

For the reasons stated, "Defendant's Second Motion in Limine," [Doc. 37], is **DEFERRED** to the District Judge, and it is **RECOMMENDED** that Truley's original "Motion to Suppress Search and Seizure of Cell Phones and Motion in

Limine," [Doc. 33], and "Defendant's Amended Motion to Suppress Search and Seizure of Cell Phones," [Doc. 36], be **DENIED**.

There are no other motions pending before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of the trial. Accordingly, **IT IS ORDERED** and **ADJUDGED** that this action be, and the same is hereby, declared **CERTIFIED READY FOR TRIAL**.

**IT IS SO ORDERED** and **RECOMMENDED**, this 21st day of February, 2020.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE